IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SHEILA BOND, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 16 C 2018 |
| v. ) | |
| ) | Magistrate Judge Sidney I. Schenkier |
| NANCY A. BERRYHILL, Acting ) | |
| Commissioner of Social Security,[1] ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER[2]

Claimant Sheila Bond ("Ms. Bond" or "claimant") has filed this action seeking judicial review under 42 U.S.C. § 405(g) of a final decision of the Defendant, Commissioner of the Social Security Administration ("SSA"), denying her application for Supplemental Security Income benefits ("SSI") and Disability Income benefits ("DIB"). Ms. Bond filed for SSI and DIB on June 19, 2013, alleging a disability onset date of August 3, 2010 (R. 249). In her application for benefits, Ms. Bond stated that she was unable to work because of depression, anxiety, HIV, arthritis, thyroid disease, and high blood pressure (R. 296). Her claim was denied initially on October 16, 2013 and on appeal on June 9, 2014 (R. 77-78, 103-104).

Ms. Bond, represented by counsel, participated in a hearing before an Administrative Law Judge ("ALJ") on June 29, 2015; a vocational expert ("VE") also testified (R. 38). Ms. Bond was born on January 16, 1964 and was 49 year old at her hearing, subsequently turning 50 years old, which is defined as an individual closely approaching advanced age. 20 CFR 404.1563

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), we have substituted Acting Commissioner of Social Security Nancy A. Berryhill as the named defendant.

[2] On April 12, 2016, by consent of the parties and pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, this case was assigned to this Court for all proceedings, including entry of final judgment (doc. # 9).

and 416.963. At the hearing, Ms. Bond amended her alleged onset date to April 17, 2013 (R. 19). On July 9, 2015, the ALJ issued an opinion finding that claimant was not disabled (R.16). The Appeals Council upheld the ALJ's determination, making it the final opinion of the Commissioner (R. 1-3). *See* 20 C.F.R. § 404.981; *Shauger v. Astrue*, 675 F.3d 690, 695 (7th Cir. 2012).

We presently consider Ms. Bond's motion to reverse or remand the Commissioner's decision (doc. # 11), and the Commissioner's motion for summary judgment (doc. # 18). For the reasons that follow, Ms. Bond's motion for remand is denied, and the Commissioner's motion for summary judgment is granted.

## I.

In her opinion, the ALJ went through the familiar five step process. 20 CFR 404.1520(a) and 416.920(a). At Step One, the ALJ determined that Ms. Bond had not engaged in substantial gainful activity since her amended onset date (R. 21). At Step Two, the ALJ found that Ms. Bond had the severe impairments of HIV status, obesity, hypertension, depression, and anxiety (*Id.*). The ALJ determined that although Ms. Bond's degenerative joint disease in her knee was a medically determinable impairment, it was not severe (R. 22). In explaining her decision that Ms. Bond's knee impairment was not severe, the ALJ noted that although Ms. Bond testified that she had right knee pain that got "really bad" on some days, Ms. Bond had reported to one doctor that she took daily walks, and she treated the pain with Ibuprofen and creams (*Id.*). At a consultative examination in September 2013 with Norbert DeBiase, M.D., Ms. Bond did not use a cane or walker, and had only mild difficulty getting on the exam table, normal to mildly decreased range of motion in her knees, and 5/5 joint strength in all limbs (*Id.*). The ALJ also referred to a CT scan taken in October 2014 that revealed only mild degenerative joint disease (*Id.*).

2

At Step Three, the ALJ found that Ms. Bond's impairments did not meet or medically equal a Listing (R. 22). Before reaching Step Four, the ALJ assigned Ms. Bond a Residual Functional Capacity ("RFC") to perform light work with certain postural limitations: never climb ladders, ropes, or scaffolding and occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs (R. 24). In analyzing Ms. Bond's physical impairments, the ALJ gave great weight to the opinions of non-examining agency doctors, David Mack and Ernst Bone, who reviewed the medical record in September 2013 and June 2014 and reviewed the report of consultative examiner, Dr. DeBiase (R. 94, 110, 473-477). Both doctors opined that Ms. Bond could perform light work with additional postural limitations; these opinions matched the RFC that the ALJ ultimately assigned Ms. Bond (R. 85-86, 113-114). In giving great weight to their opinions, the ALJ noted that Drs. Mack and Bone were disability experts, their opinions were consistent with the minimal treatment described in the medical record, and there were no contradictory opinions by acceptable medical sources (R. 27).

To address Ms. Bond's mental impairments, the ALJ limited her to work that avoided detailed or complex tasks and that involved only simple instructions, routine, repetitive tasks, occasional changes in the work setting, simple decision making and limited social demands (*Id.*). The ALJ rejected the opinion of a nurse practitioner who provided Ms. Bond with therapy because she was not an acceptable medical source (R. 27). The ALJ also explained that the nurse's opinion that Ms. Bond had marked restrictions in activities of daily living and in social functioning was not supported by Ms. Bond's treatment history showing that she had a positive response to medication (Zoloft) and evidence that she was able to engage in a large number of activities of daily living and social interactions, including attending church and group therapy, participating in family activities, cooking, driving, eating out, shopping, and attending

3

appointments (*Id.*). The ALJ also rejected the opinion of agency psychological consultant, Lionel Hudspeth, Psy.D, because he inconsistently opined both that Ms. Bond had moderate limitations in concentration, persistence and pace, and that her mental health impairment was not severe (*Id.*).

Instead, the ALJ gave great weight to the opinion of a later psychological consultant, David Voss, Ph.D., who opined that Ms. Bond had no restrictions in her activities of daily living, mild restrictions in social functioning, and moderate limitations in concentration, persistence, and pace, but that her limitations in this area would still permit her to complete "routine, repetitive, unskilled tasks at a consistent pace over a regular 40-hour workweek" (R. 28 and 110-12). Dr. Voss also opined that Ms. Bond could not perform complex tasks or carry out detailed instructions but could carry out the sustained performance of routine, simple work tasks throughout a normal workday (R. 28). As a whole, the ALJ found Dr. Voss' opinion well supported by and consistent with the medical record (*Id.*).

## II.

"We will review the ALJ's decision deferentially, and will affirm if it is supported by substantial evidence." *Decker v. Colvin*, No. 13 C 1732, 2014 WL 6612886 at *9 (N.D. Ill. Nov. 18, 2014). Substantial evidence is "relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Alevras v. Colvin*, No. 13 C 8409, 2015 WL 2149480 at *4 (N.D. Ill. May 6, 2015) (*Schenkier, J.*). The court will not reweigh evidence or substitute its own judgment for that of the ALJ. *Decker*, 2014 WL 6612886 at *9. In rendering a decision, the ALJ "must build a logical bridge from the evidence to his conclusion, but he need not provide a complete written evaluation of every piece of testimony and evidence." *Id., quoting Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005).

4

In her motion for reversal or remand, Ms. Bond contends that the ALJ made four errors. Specifically, she argues that that ALJ: (1) wrongly determined that her degenerative joint disease was not a severe impairment; (2) failed to submit a CT scan report to the state agency doctors; (3) failed to discuss relevant medical evidence which resulted in a faulty RFC; and (4) wrongly discounted the opinion of a nurse practitioner. We will discuss each issue in turn.

**A.**

Ms. Bond's argument that the ALJ erred at Step Two by finding her right knee joint disease to be non-severe can be quickly resolved. The determination of whether a claimant has a severe impairment at Step Two is a threshold requirement. *Curvin v. Colvin*, 778 F.3d 645, 648 (7th Cir. 2015). If the ALJ finds that the claimant has even a single severe impairment, the analysis proceeds to Step Three, to analyze if any of the severe impairments meet or equal a Listing. *Id.* "As long as the ALJ proceeds beyond Step Two, as in this case, no error could result solely from his failure to label an impairment as 'severe.'" *Muzzarelli v. Astrue*, No. 10 C 7570, 2011 WL 5873793, at *16 (N.D. Ill. Nov. 18, 2011) (*Schenkier, J.*) *citing Raines v. Astrue*, No. 06-cv-0472, 2007 WL 1455890, at *7 (S.D. Ind. April 23, 2007).

In this case, the ALJ found that Ms. Bond had five severe impairments. Therefore, she properly moved on to consider the remaining steps in the sequential analysis. While the claimant may disagree with the ALJ's assessment about her knee, it is not our place to decide the facts anew or reweigh the evidence that the ALJ considered. *See, e.g., Alvarado v. Colvin*, 836 F.3d 744, 747 (7th Cir. 2016). To be sure, a finding of non-severity for a particular impairment does not mean that the ALJ may ignore it in his or her later analysis; "an ALJ must evaluate all relevant evidence when determining an applicant's RFC, including evidence of impairments that are not severe." *Arnett v. Astrue*, 676 F.3d 586, 591 (7th Cir. 2012). While Ms. Bond contends

5

that her knee impairment was actually severe, she does not argue that the ALJ should have found that it met or equaled a Listing at Step Three. Therefore, the only question is whether the ALJ properly addressed the impact of Ms. Bond's knee impairment in combination with her other severe and non-severe impairments. As we explain below, we find that the ALJ fulfilled this requirement.

**B.**

Ms. Bond argues that the ALJ erred by failing to provide to state agency doctors, Mack and Bone, a CT scan report that occurred after their record reviews. We disagree.

An ALJ is not required to update a claimant's medical record every time he or she receives additional treatment, otherwise "a case might never end." *Keys v. Berryhill*, No. 16-1745, 2017 WL 548989 at *3 (7th Cir. February 9, 2017). In *Keys*, as here, the ALJ gave great weight to the opinions of two non-examining agency doctors who concluded that the claimant could perform a limited range of light work despite his lumbar degenerative disk disease and arthritis. The Seventh Circuit held that it was not error for the ALJ to rely on the doctors' opinions even though they did not review two later spinal MRI reports because the claimant provided no evidence that the reports would have changed the doctors' opinions. *Id., Keys*, 2017 WL 548989 at *3.

Similarly, in this case, Ms. Bond has provided no evidence that her October 2014 CT scan – which revealed only "mild degenerative changes" (R. 545) – would have changed the opinions of Drs. Mack and Bone. Both doctors reviewed Dr. DeBiase's medical report, which recognized that in 2013, Ms. Bond had mild knee problems, including some difficulty getting on the exam table and a reduced range of motion ("ROM") in her knees (R. 475). Dr. Bone, who reviewed the medical record in June 2014, specifically noted that Ms. Bond complained that the

pain in her knees had worsened but that a recent physical exam was "negative musculoskeletal normal ROM" (R. 110). Claimant provides no evidence to suggest that the "mild degenerative joint disease" revealed by the CT scan showed a worsening of the knee impairment found by Dr. DeBiase or supported any additional limitations than those that Drs. Mack and Bone (and the ALJ) found appropriate.

### C.

We also reject Ms. Bond's assertion that the ALJ erred by failing to mention every single detail of Dr. DeBiase's report or the report of Ms. Bond's CT scan. *Pepper v. Colvin,* 712 F.3d 351, 362 (7th Cir. 2013) (ALJ's discussion of evidence in support of RFC adequate even though it did not include written evaluation of every piece of evidence). Contrary to Ms. Bond's suggestion, the ALJ did not "cherry pick" those parts of Dr. DeBiase's report or the CT report that supported her RFC while ignoring evidence of a more severe condition. In fact, after reciting all of Dr. DeBiase's normal findings, the ALJ describes other evidence that Ms. Bond had limited range of motion in her knees, that she complained of pain in her knees, that she had mild difficulty getting on and off the exam table, and that she underwent a CT scan that showed mild degenerative joint disease (R. 22).[3] Ms. Bond points to no evidence that Ms. Bond's knee impairment was anything more than mild, and we find that the ALJ properly accounted for her physical limitations in her RFC.

### D.

---

[3] The details of Dr. DeBiase's exam that Ms. Bond argues the ALJ ignored include Ms. Bond's deferral of the heel-toe walking and squatting tests, mild difficulty in performing a "tandem" test, and complaints of pain in her knees (Mot. for Reversal or Remand at 9). Ms. Bond also contends that the ALJ ignored that she underwent a CT examination because of her complaints. However, the ALJ acknowledged Ms. Bond's complaints of pain and her CT scan; the additional detail that Ms. Bond did not perform a heel to toe or squatting test, where the doctor's note itself does not provide any explanation why, is not significant enough to find fault in the ALJ for omitting it.

7

Finally, the ALJ did not err in deciding to give no weight to the opinion of nurse practitioner, Rebekah Shepherd. An ALJ is not required to give controlling weight to a non-acceptable medical source, such as a nurse practitioner, but must assign such opinion a weight and evaluate it as part of her determination of impairment severity and functional limitations. *Brown v. Astrue,* No. 12 C 1750, 2012 WL 6692139 at *7 (N.D. Ill. December 19, 2012), SSR 06-3p, 20 C.F.R. § 404.1513(d)(1). In this case, the ALJ sufficiently explained why she discounted the opinion of the nurse practitioner. The ALJ explained that she gave nurse Shepherd's opinion no weight not only because she was not an acceptable medical source, but also because nurse Shepherd's finding that Ms. Bond had marked restrictions in activities of daily living and social functioning was at odds with the medical evidence, which showed that Ms. Bond had shown a positive response to the same medication for mental health issues for some time; participated in a wide range of daily activities; and engaged in a number of social activities such as attending church, participating in family events, and attending group therapy sessions (R. 27). Reinforcing her decision that nurse Shepherd's opinion was at odds with the medical evidence, the ALJ instead gave great weight to psychologist, Dr. Voss, who provided a detailed opinion which found that Ms. Bond' mental health limitations were less severe than those found by nurse Shepherd. We find no error in either the ALJ's treatment of Ms. Bond's mental health issues or in the RFC the ALJ assigned based on those issues.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for reversal or remand (doc. # 11) is denied and the Commissioner's motion for summary judgment (doc. # 18) is granted. This case is terminated.

**ENTER:**

SIDNEY I. SCHENKIER
**United States Magistrate Judge**

**DATE: April 18, 2017**